On April 9, 1999, the applicant, John E. Taylor, Jr., applied to reopen this court's judgment in State of Ohio v. John E.Taylor (Oct. 17, 1996), Cuyahoga App. No. 69843, unreported, which affirmed Mr. Taylor's conviction for rape. On May 7, 1999, the State of Ohio filed its brief in opposition; Mr. Taylor did not file a reply brief. For the following reasons, this court denies the application to reopen.
 FACTUAL AND PROCEDURAL BACKGROUND
Sade Hardrick, born May 28, 1986, is the daughter of Renee and Charles Hardrick. In the Fall and Winter of 1994-1995, Sade and her family lived on the first floor of a three-story house in Cleveland. Charles Hardrick's sister, Shletha Hardrick, and her boyfriend, John Taylor, lived on the second floor with their children and an uncle, Alvin Ward.
On January 31, 1995, when Charles Hardrick picked up Sade from school, he noticed that "something was wrong with her" by the way she was acting. (Tr. 287-288.) He discussed this with his wife, and she discovered blood in Sade's underwear. Thus, Mr. Hardrick took Sade to Dr. Rachel Mathew the next day.
During Sade's examination Dr. Mathew noted the following: Sade complained of abdominal pain, bleeding and "going to the bathroom a lot." (Tr. 249.) Sade's genital area was swollen, red and bleeding. She had three tears, from one to two centimeters, one on the anterior fourchette and two on the sides of the labia. Recent trauma, within twenty-four to forty-eight hours, had caused these tears. The area "was extremely painful." (Tr. 259.) When Dr. Mathew asked Sade what had caused these injuries, Sade replied that she had fallen off her bike last year, and she related one incident between her and Mr. Taylor. He had told her to take off her clothes and lay down on the floor. He then put Vaseline on his penis and put his penis into her private area. Then he told her to go wash off. Sade said this happened only once around Thanksgiving time. Dr. Mathew notified the authorities.
On February 25, 1995, The Grand Jury, indicting Mr. Taylor on one count of rape, alleged that between January 29, 1995 and February 1, 1995, he "unlawfully engaged in sexual conduct with Sade Hardrick by purposefully compelling her to submit by use of force or threat of force, Sade Hardrick being under the age of thirteen years, to wit: DOB: 05/28/86." Attorney Fred Middleton represented Mr. Taylor through the trial and the appeals.
The jury trial commenced October 31, 1995. Because Sade was only nine years old at the time, the trial judge conducted a competency hearing. She answered questions about her family, school, age, address, church, the incident and the importance of telling the truth. The judge declared Sade competent to testify.
Sade was not formally sworn. The judge and the prosecutor asked her to tell the truth, and she said she would. The judge also said that because he had qualified her to testify, the oath was not required. She testified that when she was in Mr. Taylor's residence, he told her to take off her pants and panties, that he took off his shorts, and that while she was lying down on the floor, he placed his private part into her private part. Afterwards she used the bathroom and went to sleep. She further testified that this incident happened three months before seeing Dr. Mathew. On cross-examination she stated that it was warm outside when this occurred.
Dr. Mathew testified about her examination of Sade. She opined that the trauma was not something the girl could have done to herself, but could be the result of sexual abuse or some other occurrence, such as falling off a bicycle.
Mr. Hardrick testified about Sade's age, her birthday, her behavior on January 31, and his taking her to Dr. Mathew. Additionally, the initial investigating police officer and two counselors who had worked with Sade testified and corroborated that Sade's version of events remained consistent. One counselor also testified that children have difficulty conceptualizing time and often try to block out the offense from memory.
Alvin Ward, Shletha Hardrick, and Mr. Taylor testified for the defense. The thrust of their testimony was that during the days stated in the indictment, Sade was never in their residence, much less alone with Mr. Taylor. Shletha also testified about ill feelings between Sade's family and her family: because of a debt Shletha owed to Sade's family, the respective parents forbade their children from going to the other family's living quarters. Mr. Taylor denied having sexual contact with Sade.
After both sides rested, the state vigorously argued for the trial court to instruct the jury on the issue of force or threat of force.[1] However, the trial judge determined that there was no evidence of force and refused to give such an instruction. Throughout this argument defense counsel was silent, except he once tried to object to the state's proposed instruction that the relative size between Mr. Taylor and Sade showed the use of force. The judge cut defense counsel off by replying, "I'm talking to him [the prosecutor]." (Tr. 560.)
The judge did not instruct on the issue of force. Rather, he told the jury that to find Mr. Taylor guilty of rape, it "must find beyond a reasonable doubt that on or between January 29th, 1995, to February 1st, 1995, the defendant engaged in sexual conduct with another who was not the spouse of the defendant and the other person was less than 13 years of age, whether or not the defendant knew the age of such person." (Tr. 617.) The judge reiterated that to find Mr. Taylor guilty the jury would have to find beyond a reasonable doubt that between the relevant dates he "engaged in sexual conduct with Sade Hardrick who was not his spouse, and who, at the time, was under the age of 13." (Tr. 618.)
The judge in his charge also addressed the fact that Sade was not formally sworn. He noted that "the oath was not administered [to Sade] because the Court had determined that she was competent to testify, but her testimony is also to be judged by the same standards or rules of credibility that would apply to the other witnesses." He then repeated: "[e]ven though you did not hear her be sworn by the bailiff, her testimony is such that you can believe all or part or none of, and that is your right, as with any other witness that has testified in the case. You can believe all or part or none of what the witness has said." (Tr. 614.)
In finishing the charge, the judge emphasized that "if you find that the State has proved those elements, then your verdict should be guilty. If you find that the State has failed to prove any one of those essential elements, then your verdict should be not guilty." (Tr. 618.)
The jury form read: "We, the Jury in this case being duly impaneled and sworn, do find the defendant _________________ of Rape, R.C. 2907.02 (Sade Hardrick) (5-28-96)."
The trial judge then asked the lawyers if any additions or corrections to the instructions were needed. Defense counsel replied: "Your Honor, the defendant is satisfied with the instructions to the jury." (Tr. 620.)
The jury found Mr. Taylor guilty. The trial court sentenced him to five to twenty-five years.
Mr. Middleton represented Mr. Taylor on appeal and argued the following: (1) The trial court erred when it improperly allowed Sade Hardrick to testify without being sworn. (2) Sade Hardrick was not competent to testify, when she never evidenced an understanding of the oath and was never sworn in at any time during the proceedings. (3) Mr. Taylor's due process rights were violated when the State did not supply a specific date for the criminal action despite the defendant's demand to do so. (4) The trial court erred in allowing an expert witness to testify and opine on Sade Hardrick's veracity over defense objections. (5) The trial judge improperly allowed hearsay testimony. (6) Prior inconsistent statements of a witness do not constitute substantive evidence in a criminal trial and they are evidence without probative value. (7) The state failed to prove the case beyond a reasonable doubt, and the verdict was against the manifest weight of the evidence.
On October 28, 1996, this court journalized its opinion overruling the assignments of error and affirming Mr. Taylor's conviction. On December 11, 1996, Mr. Middleton on behalf of Mr. Taylor filed a notice of appeal to the Supreme Court of Ohio. On March 12, 1997, the Supreme Court dismissed the appeal as not involving any substantial constitutional questions. Approximately two years later Mr. Taylor, through his new attorney, Paul Mancino, Jr., filed this application to reopen.[2]
 DISCUSSION OF LAW
Mr. Taylor now argues that his appellate attorney was ineffective for not raising the following arguments: (1) Mr. Taylor was denied due process of law when the court amended the indictment instructing on a different version of rape. (2) Mr. Taylor was denied due process of law when the court stated that a fact in evidence was true. The gravamen of this argument is that the trial judge usurped the jury's function when it instructed the jury in the jury form and in the instructions that Sade Hardrick was under the age of thirteen. (3) Mr. Taylor was denied due process of law when the court commented on the credibility of Sade Hardrick. (4) Mr. Taylor was denied due process of law when the indictment was constructively amended to allow evidence concerning sexual conduct on a date different from that alleged in the indictment. (5) Mr. Taylor was denied due process of law when the court failed to dismiss the indictment after finding that an element of the offense as alleged had not been proven.
App.R. 26(B)(1) and (2)(b) require applications claiming ineffective assistance of appellate counsel to be filed within ninety days from journalization of the decision unless the applicant shows good cause for filing at a later time. Mr. Taylor filed his application approximately two-and-a-half years after this court journalized its opinion. Thus the application is untimely.
He endeavors to show good cause by arguing that because his trial counsel was also his attorney before the court of appeals and the Supreme Court, he did not have the opportunity to raise the issue of ineffective assistance of counsel. He also claims that he has no knowledge of the law and was just recently able to have someone review his case.
These arguments are unpersuasive. Having the same counsel throughout the case does not adequately explain a two-year delay in seeking review on this point. Cf. State v. Davis (1999),86 Ohio St.3d 212, 214 — "Even if we were to find good cause for earlier failures to file, any such good cause `has long since evaporated. Good cause can excuse the lack of a filing only while it exists, not for an indefinite period.'" (Citations omitted.) Mr. Taylor was sufficiently knowledgeable about the law to file a postconviction petition and a mandamus action. At that time Statev. Murnahan (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, had been the law for approximately five years, and Appellate Rule 26(B) had been issued for four years. Moreover, the courts have long and repeatedly held that ignorance of the law is no excuse for untimely filing. State v. Klein (Apr. 8, 1991), Cuyahoga App. No. 58389, unreported, reopening disallowed (Mar. 15, 1994), Motion No. 49260, affirmed (1994), 69 Ohio St.3d 1481; State v. Trammell
(July 24, 1995), Cuyahoga App. No. 67834, unreported, reopening disallowed (Apr. 22, 1996), Motion No. 70493; State v. Cummings
(Oct. 17, 1996), Cuyahoga App. No. 69966, unreported, reopening disallowed (Mar. 26, 1998), Motion No. 92134; and State v. Young
(Oct. 13, 1994), Cuyahoga App. Nos. 66768 and 66769, unreported, reopening disallowed (Dec. 5, 1995), Motion No. 66164. This defect alone is sufficient to dismiss the application.
Moreover, Mr. Taylor's arguments on the ineffectiveness of his appellate counsel are not well taken. Generally, they elevate form over substance. In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington
(1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
In Strickland the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"Strickland, 104 S.Ct. at 2065.
Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jonesv. Barnes (1983), 463 U.S. 745, 77 L.Ed.2d 987, 103 S.Ct. 3308,3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen (1996), 77 Ohio St.3d 172,672 N.E.2d 638.
Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: that is, but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before it examines prejudice suffered by the defendant as a result of alleged deficiencies.
Mr. Taylor's first argument is that the trial court denied him due process of law by amending the indictment and improperly instructing the jury on a different version of rape. This argument contends that the language in the indictment relating to force or the threat of force was an integral part of the indictment and had to be included in the instructions. The failure to do so meant that Mr. Taylor was actually tried on a charge other than that for which he was indicted. This argument postulates that the Grand Jury indicted Mr. Taylor under R.C.2907.02(B). This argument is not persuasive. The Grand Jury indicted Mr. Taylor for rape under R.C. 2907.02, but did not specify any subsections.
R.C. 2907.02 provides in pertinent part as follows:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
* * *
 (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
* * *
 (B) Whoever violates this section is guilty of rape, and aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of the section shall be imprisoned for life.
An analysis of the statute reveals that the crime of rape is defined in subsection (A) and that subsection (B) is a penalty enhancement. The Grand Jury indicted Mr. Taylor under R.C.2907.02(A)(1)(b) and/or perhaps (A)(2), but not under subsection (B) as Mr. Taylor now contends. Thus the element of force was not an essential element of the indictment, and appellate counsel was not deficient in failing to raise an ill-founded argument.
Assuming arguendo that force was an element of the indictment, appellate counsel was not deficient for failing to argue that the amendment was improper. Crim.R. 7(D) provides that the court may amend an indictment in respect to "any variance with the evidence, provided no change is made in the name or identity of the crime charged." The failure to instruct upon force does not change the name or identity of the crime charged. Thus the "amendment" was not improper.
This court further notes that defense counsel not only did not object to the charge but stated that the defendant was satisfied with the instructions to the jury. This court further notes that this strategy by trial counsel, assenting to the elimination of force as part of the crime, precluded a life sentence for Mr. Taylor. Thus if an error had been committed, such error had been waived and could only be reviewed on a plain error analysis. Such an argument could succeed only if there was a clear miscarriage of justice. State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332. Upon reviewing the entire record, appellate counsel in the exercise of his professional judgment could reasonably conclude that the deletion of force from the charge did not result in a miscarriage of justice for Mr. Taylor.
Mr. Taylor's second argument is that the trial court erred by usurping the jury's fact-finding function by instructing them that Sade Hardrick was under thirteen years of age. Because the age of the victim was an essential element of the offense, the court had to leave that fact for the jury's consideration. This argument elevates, however, form over substance. All the evidence showed that Sade was under thirteen. Nothing in the record disputes this fact. Moreover, this error, if any, had also been waived by the trial counsel and could result in reversal only if a miscarriage of justice had occurred. Because the undisputed fact was that Sade was under thirteen, appellate counsel was not ineffective for failing to raise this argument.
Mr. Taylor's next argument is that the trial court committed prejudicial error by commenting on Sade's credibility. However, the record fails to support this contention. The judge merely stated that Sade was not sworn because he found her to be competent to testify. The judge then repeatedly stated that the jury was to test her testimony just like any other testimony in the case and that they could believe all, part, or none of her testimony. Stating that a witness is competent to testify is not the same as stating that the witness is to be believed. The trial court clearly instructed the jury to weigh Sade's testimony. Moreover, appellate counsel vigorously attacked the fact that Sade was not sworn. Accordingly, this court will not second-guess appellate counsel's judgment on this point.
Mr. Taylor's next argument is that the trial court erred by constructively amending the indictment when it allowed evidence that the rape occurred at some time other than that stated in the indictment. This argument focuses on Sade's statements that the incident between her and Mr. Taylor occurred months before the dates stated in the indictment. Mr. Taylor now endeavors to construe the admission of this evidence as the judge allowing the jury to conclude that if sexual conduct happened between Mr. Taylor and Sade at any time, as compared to the dates stated in the indictments, then the jury could find Mr. Taylor guilty. However, the record does not support this argument. In his charge the trial judge clearly instructed the jury that they had to find that the incident occurred on or between January 29, 1995, and February 1, 1995. Appellate counsel could thus reasonably conclude that this was a weak and losing argument. The court further notes that appellate counsel generally raised this issue when counsel argued that the state prejudiced the defendant by failing to answer a bill of particulars as to exactly when the incident occurred. Again, this court will not second-guess counsel's judgment.
Mr. Taylor's final argument is that the trial court erred by not directing a verdict for Mr. Taylor, because the required element of force was not proven. This argument is a variant on Mr. Taylor's first argument, that under the indictment force or threat of force was an essential element of the offense. However, as explained above, force is not an element to the crime of rape under R.C. 2907.02(A)(1)(b), but rather a penalty enhancement.
This court denies, therefore, the application to reopen, because it is untimely and does not establish good cause and because appellate counsel was not deficient in failing to raise the proposed arguments.
LEO M. SPELLACY, J., and ANNE L. KILBANE, J., CONCUR.
 __________________________________ DIANE KARPINSKI PRESIDING JUDGE
[1] In 1995 under R.C. 2907.02(A)(2), rape was an aggravated felony of the first degree, punishable by an indefinite term of imprisonment, with the minimum term of actual incarceration being five, six, seven, eight, nine or ten years, and the maximum term being twenty-five years. However, if a person convicted under R.C. 2907.02(A)(1)(b) (i.e., for rape of a person less than thirteen years of age), purposely had compelled the victim to submit by force or threat of force, then the punishment was life imprisonment, under R.C. 2907.02(B).
[2] A review of Mr. Taylor's file also reveals that in January 1997, Mr. Taylor filed a postconviction petition on the Senate Bill 2 sentencing issue and that in September 1997, he filed a mandamus action for jail time credit.